## MURRAY v. THE STATE.

1. That paragraph of the constitution of 1868 which provided the manner in which laws and sections of the code should be amended or repealed was by its own terms to be construed as directory only to the General Assembly.
2. The local act of August 26, 1872 (Acts 1872, p. 478), providing that "the county of Washington be excepted from the operation of the act entitled act to create a county court in each county of the State of Georgia, approved January 19, 1872," does not "contain any matter different from what is expressed in the title thereof."
3. There was nothing in the constitution of 1868 prohibiting the General Assembly from varying by a local or special law an existing general law on a subject not affecting private rights.
4. One act will not repeal another by implication when there is no conflict between the two acts.
5. The local act of August 26, 1872, providing that no county court should be established for Washington county under the county-court act of that year, was not in any way affected by the local act of 1879, repealing the act creating a criminal court for Washington county, nor by the act passed in that year striking certain named counties from the list of excepted counties in the county-court act of 1872, nor by the act of 1879 providing for uniformity in the jurisdiction of and procedure and method of appointment of officers in the county court.
6. The local act of August 26, 1872, declaring that the county-court act of that year should not apply to Washington county, was not in any way affected by the fact that the Codes of 1873 and 1882 did not in any manner refer to such local act.
7. Even if, since the adoption of the Code of 1895, a county court could be lawfully established in Washington county upon the recommendation of the grand jury, there is nothing in that code which would have the effect of making valid the attempted establishment of such a court prior to the adoption of the code.

Argued October 15, — Decided October 26, 1900.

Petition for certiorari. Before Judge Evans. Washington superior court. July 5, 1900.

*Thomas W. Hardwick*, for plaintiff in error.
*B. T. Rawlings, solicitor-general*, and *Evans & Evans*, contra.

COBB, J. The question presented in the present case is whether, at the March term, 1895, of Washington superior court, the grand jury of that county could lawfully make a recommendation which would have the effect of establishing a county court in that county. On January 19, 1872, an act was approved providing for the establishment of a county court in the different counties of this State. The title to this law was, "An act to create a county court in each county of the State of Georgia, except certain counties therein men-

tioned." Forty-six counties were expressly excepted from the operation of the act, but Washington county was not one of the excepted counties. It was provided in this statute that the same should not take effect in any county "until the grand jury thereof shall, by a majority, so recommend." See Acts 1871–2, p. 288. On August 26, 1872, an act was approved with the following title: "An act to except the county of Washington from the operation of an act approved January 19, 1872, creating a county court." The body of the act provided that "the county of Washington be excepted from the operation of the act entitled act to create a county court in each county of the State of Georgia, approved January 19, 1872." The Code of 1873 contains the county-court act of January 19, 1872, but no reference is made in that code to the local act above referred to, and Washington county is not placed in the list of excepted counties. Code 1873, § 279. In 1877 an act was passed establishing a criminal court for the county of Washington, with jurisdiction to try criminal cases below the grade of felony. The county-court act of 1872, so far as the same relates to the appointment of a judge, his term of service, and the practice and procedure in criminal cases, was expressly made a part of the act creating the criminal court. The civil jurisdiction of this court was limited to proceedings for the forfeiture of recognizances, and to issuing, hearing, and determining possessory warrants and writs of habeas corpus. Acts 1877, p. 81. On October 13, 1879, an act was approved which repealed the act creating a criminal court for Washington county. Acts 1878–9, p. 368. On the same day an act was approved which defined the jurisdiction and powers of and procedure in the county court, so as to establish the uniformity of procedure in such courts required by the constitution. No reference was made in this act to the manner in which county courts should be created. It related entirely to the jurisdiction of and procedure in the county court, and the method of appointing officers in the same after the court was established. See Acts 1878–9, p. 132. On October 18, 1879, an act was approved which, among other things, provided that forty-five of the counties named in the county-court act of 1872 as not being within the operation of that act should be stricken out of the act as it appeared in the Code of 1873, § 279. No reference is made in this act to the county of Washington. The effect of the act of 1879 last referred to was to leave the county-court act, as it was codified,

with the county of Walton only excepted from the operation of the law, so far as the counties named in the section of the code above cited are concerned. See Acts 1878–9, p. 71. The section of the Code of 1873 just referred to, as it is embodied in the Code of 1882, appears to apply to every county in the State except Walton. Code 1882, § 279. The present code, which went into effect on December 15, 1895, provides that, "Upon the recommendation by the majority of the grand jury of any county in this State (except Walton), a county court shall be established for such county." Civil Code, § 4170. It is conceded that if the local act of 1872, providing that Washington county should be excepted from the operation of the county-court act of that year, was a valid law and was of force in March, 1895, a county court could not lawfully be established in Washington county upon the recommendation of the grand jury.

1, 2. It is contended that the local act of August 26, 1872, "is unconstitutional, because its title fails to set forth fully and distinctly everything contained in the body of the act." If it is intended by this language, quoted from the brief of counsel for defendant in error, to raise the objection to the local act of 1872 that it is an act amending another act by a mere reference to its title and does not distinctly and fully in the body of the act describe the law to be amended as well as the alteration to be made, all that is necessary to be said is that that provision of the constitution of 1868 regulating the manner in which laws and sections of the code should be amended or repealed is, by its own terms, declared to be directory only to the General Assembly. Const. 1868, art. 3, sec. 6, par. 3, Code of 1873, § 5066. See also *East Georgia Railroad Co.* v. *King*, 91 *Ga.* 519. If it is intended to raise the objection that the act "contains matter different from what is expressed in the title thereof," we do not think that the objection is well taken. The title of the local act for Washington county sets forth that the purpose of the act is to except the county of Washington from the operation of an act approved January 19, 1872, "creating a county court." In the body of the act it is provided that Washington county shall be excepted from the operation of an act approved January 19, 1872, "creating a county court in each county in the State of Georgia." There can be no doubt whatever that, so far as the body of the act is concerned, the act intended to be amended is fully identified. The date on which the act was approved is given; and

while the entire title is not set forth, enough of it is embodied in the amending act to show with unerring certainty what was the act intended to be amended. This being true, was there enough in the title of the act to indicate what was to be the character of the proposed legislation and what was the law to be amended? It is clear from the title that one of the purposes of the act was to except Washington county from the provisions of a law approved January 19, 1872. Nothing can be clearer than this. Is there enough in the title to indicate what this law was? In order to identify the law the date of its approval is given, as above stated, followed by the words "creating a county court." It is said that there was no law of that date "creating a county court"; that the county-court act of 1872 did not create a county court, but simply provided how such court might be created in certain counties. When we keep in mind that the county-court act of 1872 is entitled an act "to create a county court," and that it is the only act on that subject passed by the General Assembly in that year and the only one approved by the Governor on the date mentioned in the local act, it can with a degree of certainty almost amounting to "reasonable and moral" be held that the title of the local act of 1872, which referred to an act approved on that day and described as an act "creating a county court," could not refer to any other statute than the county-court act of 1872.

3. It is further contended that the local act of 1872 is unconstitutional, "because it was an attempt to amend a general law by a special act." It is said that in the case of *Graves* v. *Tift*, 50 *Ga.* 122, it was held that the county-court act of 1872 was a general law. Even if it be conceded that the county-court act of 1872 was a general law, there was nothing in the constitution of 1868 which prohibited the passage of a special law on a subject of this kind for which provision had already been made by an existing general law. Const. 1868, art. 1, par. 26, Code of 1873, § 5018.

4. It is contended further that the local act of 1872 was repealed by the act of 1877, creating a criminal court for Washington county. This act does not expressly repeal the local act. The contention is that it repeals that act by implication. There can be no repeal by implication unless there is a conflict between the two acts, and these two acts do not at all conflict with each other. The effect of the local act of 1872 was to prevent a county court from being estab-

lished upon the recommendation of the grand jury for Washington
county.    There was nothing in this act nor in the county-court act
of the same year which interfered at all with the right of the legis-
lature to establish a county court in Washington county, if they saw
proper to do so.    For that reason the act which established a court
with only part of the jurisdiction of the county court would not at
all conflict with the act which in effect says that, if a county court
be created for Washington county, it must be created by special act
and not under the provisions of the county-court act of 1872.    The
creation of a criminal court, instead of being inconsistent with the
scheme of the local act, was rather in consonance with it.    The ef-
fect of the local act was to remit the subject of what local courts
should be established in Washington county to the General Assem-
bly, and to take that county out of the operation of the act provid-
ing that county courts might be established in another way.

5. Three acts were passed in 1879, one repealing the criminal
court of Washington county, another reducing the number of coun-
ties excepted from the operation of the county-court act of 1872,
and still another making uniform the jurisdiction and powers of and
the procedure and method of appointment of officers in the county
court.    It is argued that the effect of these laws was to place
Washington county in a position where it was, after the date of
these acts, lawful to have a county court established in that county
upon the recommendation of the grand jury.    The only one of
these acts which refers in terms to Washington county is the one re-
pealing the criminal court of that county.    If there was nothing in
the act establishing the criminal court to alter the status of Wash-
ington county so far as the county-court act was concerned, the re-
peal of the criminal-court act would have no effect upon the matter.
The effect of the act reducing the number of excepted counties was
by its terms only to strike out those counties named in the act;
and as Washington county was not named in the act originally and
was not named in the act reducing the number of counties, and as
the local act of 1872, providing that Washington county should be
excepted from the operation of the county-court act, was not in
any way mentioned, the act of 1879 could not be said to have had
any effect at all upon the local act of 1872.    The act providing for
uniformity of jurisdiction, etc., of county courts, did not refer in
any way to the manner in which such courts could be created or

where they should be created; and for this reason it had no effect, either upon that part of the county-court act of 1872, providing how and where such courts might be created, or upon the local act of 1872, providing, in effect, that no county court should be created under the county-court act for Washington county. See *Lorentz* v. *Alexander*, 87 *Ga.* 444.

6. It is further argued that because the local act of 1872 was not embodied in the Codes of 1873 and 1882, the same is no longer of force. Neither of these codes was adopted by the General Assembly. See *Central Rwy. Co.* v. *State*, 104 *Ga.* 839–840. Whether the local act of 1872 was omitted from these two editions of the code intentionally or by oversight is immaterial. Even if the purpose of the compilers was to treat the local act as no longer of force, they had no authority to carry this purpose into effect.

7. It is contended that since the adoption of the Code of 1895 a county court could be legally established in Washington county by the recommendation of the grand jury, and that, this being true, the effect of the adoption of that code in December of that year was to legalize the court attempted to be created in March preceding; and that this would be especially true in the light of the fact that the judge who presided when the plaintiff in error was convicted was appointed since the adoption of the code. It is not necessary to decide in the present case whether, since the adoption of the Code of 1895, a county court could be established in Washington county upon the recommendation of the grand jury, for the reason that, even if this be conceded to be true, it would not have any effect upon the court attempted to be established before that code went into effect, there being nothing in the code which could be construed as so retroactive in its nature as to legalize a court which was established without authority of law prior to its adoption.

We have, after a careful consideration of this case, reached the conclusion that there was no authority of law for the establishment, in March, 1895, of a county court in Washington county in the manner in which that court was sought to be therein established; and but one further question needs to be alluded to before finally disposing of the case. It is said that the court has been in existence for more than five years; that it has rendered judgments in civil cases aggregating in amount thousands of dollars, and has disposed of many hundreds of criminal cases where persons have

been condemned to pay fines or serve sentences in the chain-gang; and that the consequences to result from a holding that the court was illegally established would be to many persons very disastrous. It is said that the authority of the court should be sustained for the reason that the persons assuming to be officers thereof were acting under color of law, and that their acts would be valid as the acts of de facto officers. Without attempting now to decide the question as to whether there can be such a thing as a de facto court, so far as property rights which are sought to be affected by the judgment of such a court are concerned, we are clear that in a case involving the liberty of the citizen there can be no such thing as a de facto court, where the jurisdiction and authority sought to be exercised is questioned at the threshold of the proceeding, as was done in the present case by a plea to the jurisdiction, filed on arraignment.

The tribunal in which the accused was arraigned having no legal existence, errors committed by it could not be corrected by certiorari, and therefore the judge did not err in refusing to sanction the petition for certiorari.

*Judgment affirmed.　All the Justices concurring.*